UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **COURTNEY TAYLOR,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**ZIP CAPITAL GROUP, LLC**, a California registered company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Courtney Taylor ("Plaintiff Taylor" or "Taylor") brings this Class Action Complaint and Demand for Jury Trial against Defendant Zip Capital Group, LLC ("Defendant" or "Zip Capital Group") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Taylor, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**PARTIES**

1. Plaintiff Taylor is a resident of Rowlett, Texas.

2. Defendant Zip Capital Group is a California registered company headquartered in Irvine, California.

**JURISDICTION AND VENUE**

1

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does business in this District and the wrongful conduct giving rise to this case was directed into this District where the Plaintiff resides.

## INTRODUCTION

5. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. According to online robocall tracking service "YouMail," 4.5 billion robocalls were placed in August 2024 alone, at a rate of 143.8 million per day. www.robocallindex.com (last visited September 22, 2024).

10. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

11. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

12. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13. Zip Capital Group is a business funding company that solicits working capital and merchant cash advances to businesses throughout the US.[3]

14. Defendant Zip Capital Group places calls and sends text messages to solicit its business funding solutions.

15. As per this job description from a Zip Capital Group transaction coordinator, the Defendant places calls to close warm and cold deals:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/zip-capital-group/about/

3



16. Zip Capital Group places solicitation calls and sends text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

17. The calls and text messages that Zip Capital Group places to consumer phone numbers are solicitations for business funding.

18. Consumers have posted complaints online about unsolicited telemarketing that they have received from Zip Capital Group, including:

- "These guys will NOT stop calling me. I never asked for info from this company. Asked 'Jennifer' if it bothered her to violate the Do Not Call list. She answered, 'Not particularly' and hung up. Lovely people. Must be a large operation since they use Legal Zoom as their registered agent. Lol. Company: From this point forward every time you call me I will report you to the FCC AND call your office back to waste your time. Leave me alone!!!!"[5]

- "They cold call you and when you ask to be taken off their contact list they hang up. Then when you talk to an underwriter and ask to be taken off the contact list they also hang up and say they will although they don't have any of your contact information, name of your company, etc. Very much likely a scam or non-reputable lender at best. SPAM SPAM SPAM"[6]

---

[4] https://app.jobzmall.com/profile/peter-elliott
[5] https://www.google.com/search?q=zip+capital+group
[6] Id.

- "If upper management sees this please put something in place to take people off their mail lists… I have gotten emails text messages non stop from multiple people in this company about funding even after communicating to them about taking me off their list they keep doing it …. Just STOP!!! FTL"[7]

- "I don't trust and would NEVER work with a company that uses ILLEGAL ROBO CALLING as one of it's marketing angles! Pretty sure you have already been sued, yet continue to call me weekly and many others. Last chance. One more call and I am contacting the FTC and State for assistance. UPDATE TO REPLY FROM ZIP CAPITAL: Of course you can't find my personal name in your "database", you ROBO call businesses trying to solicit for your equipment financing and continue to ILLEGALLY Tele-market using AUTOMATED ROBO systems and you SPOOF from different numbers often...even the recorded message admits to this type of behavior saying call me back at....OR just go ahead and call back the number on your caller id, which is different and changes. Like I mentioned, you have been sued already for this and yet you choose to continue unethical/illegal business practices like this, but hey you already know this!! I have called your office and spoke with someone about having our number removed. We will see if it happens! A quick Google search will show many complaints about this. And since you are calling my business, I am a prospect on your list, so the review will stand."[8]

- "The use of recorded telemarketing is illegal and Zip Capital was sued in a class-action suit on March 3, 2019 for violating the Telephone Consumer Protection Act."[9]

- "Company robocalls business and leaves phony voicemails asking you to call back temporary spoofed numbers so they can hawk their fraudulent business loans. The company is a Scam"[10]

- "These people keep calling me for a loan when I have now asked 3 times to be placed on their Do Not Call List."[11]

19. In response to these calls and text messages, Plaintiff Taylor brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Class and costs.

### PLAINTIFF TAYLOR'S ALLEGATIONS

---

[7] Id.
[8] Id.
[9] https://www.yelp.com/not_recommended_reviews/zip-capital-group-irvine
[10] https://www.pissedconsumer.com/zip-capital-group/RT-F.html#google_vignette
[11] https://www.chamberofcommerce.com/united-states/california/irvine/financial-institution/45229869-zip-capital-group-llc

20. Plaintiff Taylor is the sole owner and user of her cell phone number ending in 8487.

21. Plaintiff Taylor registered her cell phone number on the DNC on October 19, 2004.

22. Plaintiff Taylor has owned her cell phone number for over 20 years.

23. Plaintiff Taylor uses her cell phone number for personal and household use only as one would use a residential landline.

24. It has never been held out by Plaintiff Taylor to the public or advertised for business purposes.

25. It has only ever been used as a personal use phone number.

26. Plaintiff Taylor uses her cell phone number to communicate with family and friends.

27. Plaintiff Taylor uses her cell phone to deal with household issues like scheduling services.

28. The calls that Plaintiff Taylor received from Zip Capital Group were received more than 31 days after the Plaintiff registered her cell phone number on the DNC.

29. On September 12, 2024 at 10:32 AM, Plaintiff Taylor received 2 unsolicited text messages to her cell phone:



30. Both of the text messages are solicitations that solicit the acquisition of a line of credit.

31. When 888-398-2314 is called, a Zip Capital Group employee answers the call.[12]

32. Plaintiff Taylor has never done business with Zip Capital Group or consented to be contacted by them.

33. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Taylor in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

34. Seeking redress for these injuries, Plaintiff Taylor, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

**CLASS ALLEGATIONS**

---

[12] Based on an investigation conducted by Plaintiff's attorneys

35. Plaintiff Taylor brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Zip Capital Group texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

36. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Taylor anticipates the need to amend the Class definition following appropriate discovery.

37. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Zip Capital Group sent multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text;

8

(b) whether the text messages constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff Taylor will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Taylor has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Taylor and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Taylor nor her counsel have any interest adverse to the Class.

40. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Taylor. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Taylor and the Do Not Call Registry Class)**

41. Plaintiff repeats and realleges paragraphs 1-40 of this Complaint and incorporates them by reference herein.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

44. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Taylor and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Taylor and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

46. As a result of Defendant's conduct as alleged herein, Plaintiff Taylor and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

47. To the extent Defendant's misconduct is determined to be willful and knowing, the

Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Taylor requests a jury trial.

**COURTNEY TAYLOR**, individually and on behalf of all others similarly situated,

DATED this 12th day of November, 2024.

By: /s/ *Stefan Coleman*

Stefan Coleman

11

law@stefancoleman.com
COLEMAN PLLC
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160
(877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

Nayeem N. Mohammed (local counsel)
Law Office of Nayeem N. Mohammed
539 W. Commerce St.
Ste 1899
Dallas, TX 75208
972-767-9099
Email: nayeem@nnmpc.com

*Attorneys for Plaintiff and the putative Classes*

* *Pro Hac Vice* Admission to be sought